Filed 1/4/22  P. v. Williams CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DARNELL WILLIAMS,<br><br>Defendant and Appellant. | C093230<br><br>(Super. Ct. No. 11F02295) |

Defendant Darnell Williams appeals from the trial court's order denying his petition for resentencing under Penal Code section 1170.95.[1]  Defendant argues the trial court erred when it considered the record of conviction to conclude defendant was ineligible for relief.  In supplemental briefing, defendant also claims the court failed to appoint him counsel.  We will affirm the trial court's order.

---

[1]  Undesignated statutory references are to the Penal Code.

1

# I. BACKGROUND

In 2011, defendant and two codefendants approached the victim sitting in his car in a parking lot and shot him 21 times, killing him. (*People v. Banks et al.* (Oct. 17, 2018, C077034) [nonpub. opn.] (*Banks*).)[2] The prosecution's theory at trial was that the shooting was retaliation for a previous dispute, and the prosecutor asked the jury to find defendant and the two codefendants "guilty as direct perpetrators," and a third codefendant "guilty as an aider and abettor." (*Ibid.*) Defendants argued they had acted in self-defense. (*Ibid.*)

The trial court instructed the jury on aiding and abetting intended crimes using CALCRIM No. 401. The court also instructed the jury on first and second degree murder with malice aforethought, using CALCRIM No. 520, and first degree murder, using CALCRIM No. 521. The jury was not instructed using CALCRIM Nos. 402 or 403, which describe aiding and abetting principles under the natural and probable consequences doctrine, or on any felony murder theory. "The jury found [defendant] not guilty of first degree murder, but guilty of second degree murder. The jury found true the allegations that [defendant] personally used and discharged a firearm. The jury found not true the allegation that [defendant] personally discharged a firearm causing death." (*Banks, supra*, C077034.)

On appeal, defendant challenged, among other issues, the use of pattern jury instruction CALCRIM No. 401, arguing it erroneously allowed "the jury to find him guilty as an aider and abettor of implied malice murder, independent of the natural and probable consequences doctrine." (*Banks, supra*, C077034.) We rejected his argument,

---

[2] We previously granted defendant's request to incorporate by reference the record of conviction. Defendant also submitted portions of the record of conviction, including the direct appeal opinion, jury instructions, and jury verdict forms in support of his petition to the trial court.

explaining the argument was based on the incorrect premise "that an aider and abettor of second degree implied malice murder must harbor an intent to kill." (*Ibid.*) Because aider/abettor liability required only the specific intent to aid in the commission of the crime, and a direct perpetrator could be guilty of murder based on implied malice, defendant could be convicted of intentionally aiding and abetting implied malice murder. (*Ibid.*) As we explained by way of illustration, "[w]hen [defendant] approached [the victim]'s car with [codefendants] Alvarez and Banks, he could have done so knowing Alvarez and Banks intended to confront [the victim] with a gun, intending to assist in that act, knowing the act would naturally and probably result in shots being fired, knowing Alvarez and Banks would fire with conscious disregard for [the victim]'s life, and sharing in that conscious disregard." (*Ibid.*) We modified the judgment to correct defendants' custody credits and remanded the matter for the trial court to exercise its then-newly granted discretion to strike defendant's firearm enhancements and for proceedings under *People v. Franklin* (2016) 63 Cal.4th 261, and otherwise affirmed the judgment. (*Banks, supra,* C077034.)

In January 2020, defendant filed a petition for resentencing under section 1170.95. The declaration attached to his petition stated: (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he was convicted of murder pursuant to the felony murder rule or the natural and probable consequences doctrine; and (3) he could not now be convicted of murder because of the changes made to sections 188 and 189, effective January 1, 2019. Defendant also requested appointment of counsel.

The trial court appointed counsel and the parties submitted briefing. The prosecution argued defendant was not eligible for relief under section 1170.95, based on the direct appeal opinion and jury instructions, because he was convicted as either a direct perpetrator with implied malice or as a direct aider/abettor, and was not convicted

3

of felony murder or murder under the natural and probable consequences doctrine. Defendant, through counsel, submitted a copy of the direct appeal opinion, jury verdict forms, and jury instructions, and asked the court to "review the record of conviction and set the matter for further hearing pursuant to . . . section 1170.95[, subdivision] (d)."

The trial court issued a written decision denying the petition. The court explained, "[A]t trial defendant Williams's jury was not instructed on the natural and probable consequences doctrine of either accomplice liability or conspiracy liability, and was not instructed on either first degree felony-murder or second degree felony-murder. Rather, defendant Williams's jury was instructed only with CALCRIM No. 401, on direct aiding and abetting, and with CALCRIM Nos. 520 and 521 on express and implied malice aforethought and willful, deliberate, premeditated murder. The jury acquitted defendant Williams of first degree murder but found him guilty of second degree murder." The trial court then quoted the direct appeal opinion, reciting the scenario above, which discussed the possibility defendant could have been a direct aider/abettor of implied malice murder. The court concluded defendant was not convicted of murder under the natural and probable consequences doctrine or a theory of felony murder and was not eligible for relief under section 1170.95.

## II. DISCUSSION

Defendant's arguments shift over the course of briefing. In his opening brief, which was filed before our Supreme Court issued its decision in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), defendant argued that "[a]fter appointment of counsel," the trial court incorrectly engaged in " 'judicial factfinding' " because it considered the "trial court record" to deny the petition. In his reply and supplemental briefs, which were filed after *Lewis*, defendant argues the trial court erred because it "failed to appoint counsel and relied on this court's conclusion that the evidence at trial was sufficient to allow a jury to find that [defendant] had acted with implied malice," which constituted the

4

impermissible "weighing of evidence."  Regardless which version of defendant's arguments we evaluate, we see no merit.

A.    *Senate Bill No. 1437*

Senate Bill No. 1437 (2017-2018 Reg. Sess.), which became effective on January 1, 2019, was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  The legislation accomplished this by amending section 188 to require that a principal act with express or implied malice (§ 188, as amended by Stats. 2018, ch. 1015, § 2) and by amending section 189 to limit the conditions under which a person can be liable for felony murder.  (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 3.)

Senate Bill No. 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶]  (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial . . . .  [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a).)

After a defendant submits a petition, the court must decide whether the defendant has stated a prima facie case for eligibility.  (§ 1170.95, subd. (c).)  As explained by our Supreme Court in *Lewis, supra*, 11 Cal.5th at page 966, "section 1170.95, subdivision (c) does not envision a structure by which courts can make an initial determination without

5

briefing and without the appointment of counsel. Instead, there is a much more logical interpretation of this provision, and it is the one we adopt here: a complying petition is filed; the court appoints counsel, if requested; the issue is briefed; and then the court makes one (not two) prima facie determination."

B.       *Analysis*

As a threshold matter, the trial court did not err by failing to appoint counsel because the court did, in fact, appoint defense counsel shortly after defendant filed his petition. Defense counsel proceeded to file documents on defendant's behalf, including a request for an extension of time and a reply brief with nearly 80 pages of attachments from the record of conviction.

Nor did the court err in considering the record of conviction in defendant's case, including the jury instructions from his trial. As the Supreme Court explained in *Lewis*, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis, supra*, 11 Cal.5th at p. 971.)

In particular, the trial court "may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, [but] the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the

6

court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra*, 11 Cal.5th at p. 971.)  While appellate opinions "are generally considered to be part of the record of conviction[,] . . . the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' " (*Id.* at p. 972.)  Jury instructions may also be considered as part of the record of conviction.  (See *People v. Gomez* (2020) 52 Cal.App.5th 1, 16, review granted Oct. 14, 2020, S264033.)  The trial court was thus permitted to consider the jury instructions when it evaluated whether defendant was eligible for relief under section 1170.95.

Nor do we agree that the trial court engaged in "judicial factfinding" when it quoted the direct appeal opinion, which depicted a possible avenue by which defendant could have been found guilty on a theory he directly aided/abetted an implied malice murder.  The trial court's order does not use the direct appeal opinion as a springboard to make any factual or legal findings, nor did it adopt the statement from the direct appeal as a definitive description of the facts of the case.  Rather, the court appears to have quoted the opinion for the same reason we made the statement in the direct appeal opinion in the first place—as a way of illustrating how the instructions given to the jury could apply to the case.  Consistent with *Lewis*, the trial court considered the direct appeal opinion as part of the record of conviction, but did not use it to "supply all answers," and instead relied on the jury instructions for its ultimate conclusion.

Finally, defendant argues, without citation to any authority, that he could have been convicted under the natural and probable consequences doctrine, even if the jury was not instructed on that doctrine, because direct aider/abettor liability requires "the aider and abettor's acts were *a legal cause of the death*."  Because defendant acted "*with* the mental states attendant to implied malice but *without* the act being *a legal cause of death*," he argues, he was convicted on a mere "variation on the 'natural and probable

7

consequences' doctrine."  Assuming we reach defendant's argument, even though it was first raised in his reply brief, the distinction between direct aider/abettor liability and aider/abettor liability under the natural and probable consequences doctrine is in the required intent, rather than in the causal relationship between a defendant's acts and the victim's death.  (*People v. Gentile* (2020) 10 Cal.5th 830, 850-851 ["the core feature of the natural and probable consequences doctrine is that it eliminates the mental state requirement for the nontarget crime"]; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1058; *People v. McCoy* (2001) 25 Cal.4th 1111, 1117 ["a person who aids and abets a crime is guilty of that crime even if someone else committed some or all of the criminal acts . . . aiders and abettors may be criminally liable for acts not their own"].)  And, in any case, it does not make sense to conclude the jury found defendant guilty using a theory on which it was not instructed.  (*People v. Soto, supra*, at pp. 1058-1059; *People v. Smith* (2020) 49 Cal.App.5th 85, 92, fn. 5, review granted Jul. 22, 2020, S26835.)  The jury was not instructed on the natural and probable consequences doctrine, or on any target crime upon which second degree murder based on the natural and probable consequences doctrine could be predicated.  As a result, defendant could not have been convicted under that theory.

Only "[a] person convicted of felony murder or murder under a natural and probable consequences theory" is eligible for relief under section 1170.95.  (§ 1170.95, subd. (a).)  Defendant's jury was not instructed on any felony-murder or natural and probable consequences theory, and his conviction could not have been based on either theory.  Rather, the jury instructions and verdict show that defendant was prosecuted and convicted of second degree murder either as a direct perpetrator or as a direct aider and abettor.  Both theories are still permissible after the amendments made by Senate Bill No. 1437.  (*People v. Gentile, supra*, 10 Cal.5th at p. 850; *People v. Roldan* (2020) 56 Cal.App.5th 997, 1004-1005.)  The trial court was thus correct when it determined defendant was not eligible for relief under section 1170.95.

### III. DISPOSITION

The order denying defendant's section 1170.95 petition is affirmed.

/S/

---
RENNER, J.

We concur:

/S/

---
ROBIE, Acting P. J.

/S/

---
MAURO, J.